UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA F. MUNOZ,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>    Defendant. | No. 1:20-cv-01531-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 18, 27)** |

## I. Introduction

Plaintiff Adriana Munoz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 18, 27. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

## II. Factual and Procedural Background[2]

On August 7, 2017 Plaintiff applied for disability insurance benefits alleging disability as of August 2, 2017. AR 173–178. The Commissioner denied the application initially on October 17, 2017 and on reconsideration on January 31, 2018. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on February 5, 2020. AR 33–55. On February 25, 2020 the ALJ issued a decision denying Plaintiff's application. AR 19–28. The Appeals

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 7 and 9.
[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed. Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

1

Council denied review on August 24, 2020.  AR 5–10.  On October 28, 2020 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a

sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.     The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 2, 2017. AR 21. At step two the ALJ found that Plaintiff had the following severe impairments: asthma and migraine. AR 22. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: anxiety and minor shoulder impairment. AR 22–23. AR 29. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 23.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: working in a moderate noise environment with avoidance of concentrated exposure to fumes, dusts, pulmonary irritants, unprotected heights and heavy machinery. AR 24–26.

At step four the ALJ concluded that Plaintiff could perform her past relevant work as an accounting clerk which did not require performance of any activities precluded by the RFC. AR

26. At step five, in reliance on the VE's testimony, the ALJ also concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: storage rental clerk, electronics worker, and production assembler. AR 27. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her alleged onset date of August 2, 2017. AR 28.

## V. Issues Presented

Plaintiff asserts one claim of error: 1) that the ALJ failed to provide a clear and convincing reason supported by substantial evidence to discount Plaintiff's pain testimony. Br. at 14–19. Doc. 18.

### A. Plaintiff's Pain Testimony

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir.

---

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

### 2.  **Analysis**

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering.  AR 24.  Accordingly, the ALJ was required to articulate clear and convincing reasons for rejecting Plaintiff's reported symptoms.  *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).

Plaintiff highlights the following testimony that she contends should have been credited as true: "Ms. Munoz testified, among other things, that her migraines were of such severity about five days per month that she stays in bed.  (AR 24, 43–44)  On other days, exposure to certain odors or

chemicals cause migraines of lesser severity which can be reduced by Ms. Munoz showering and laying down in a dark room for two to three hours. (AR 42)." Br. at 14. Plaintiff contends these limitations would be work preclusive given the VE's testimony that past relevant work and other work in the national economy would be precluded for a hypothetical individual who would be absent from work four days per month, or require two additional breaks of 45-minute duration (in addition to regularly scheduled breaks). AR 52–53.

It is worth clarifying at the outset in which respects Plaintiff's testimony was in actual conflict with the ALJ's assessed RFC. As with any unfavorable decision, the ALJ's opinion contains the familiar boilerplate language finding that, "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 24. However, and importantly, an overly critical scrutiny of the ALJ's reasoning, even if for the moment we assume was misguided, is an unnecessary exercise unless Plaintiff did in fact testify to the existence of limitations greater than the ALJ included in the RFC. *See Jamerson*, 112 F.3d at 1066 (errors are harmless if inconsequential to the nondisability determination); *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.") (citation omitted); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling"); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Here, the relevant testimony reads as follows:

ATTY: Thank you, Your Honor. Migraine headaches, how often out of a seven day week or month do you get them?

ALJ: Well she indicated she has a migraine every day but that they're somewhat

mild so I guess, Ms. Munoz, how often do you have more than the typical every day migraine?

CLMT: I'd say about maybe three times a week, if I get a very powerful smell.

BY THE ATTORNEY:

Q When you say you could get a very powerful smell, give me an example?

A Like I go outside and try to weed and somebody is doing their laundry and it comes and that automatically just triggers my migraine.

Q Okay, now, when you get the more powerful migraine, how long will it last?

A I would say a good two hours to three.

Q What do you do to alleviate it?

A I have to get away and I usually will take a shower to wash everything off and then just relax.

Q And after you take the shower, when you say you relax - -

A Either lay down, just lay down.

Q Do you take any kind of medication?

A No, some of them make me throw up.

Q Anything over the counter?

A No.

Q And do you have to be in a dark quiet room or a certain type of room?

A My bedroom is dark, completely dark. I made it that way.

Q And does that help?

A Yes, absolutely.

. . .

Q Now, in order to prevent you from having migraines is there anything you can do, the stronger migraines, is there anything you can do?

A Isolation.

> Q So you isolate. Now, do you have any days during the month that you just can't get out of bed?
>
> ALJ: I'm sorry, I didn't hear you, Ms. Proudian, that you can't –
>
> BY THE ATTORNEY:
>
> Q Just can't get out of bed for any reason?
>
> A I'd say about five times a month.
>
> Q When you say five times do you mean five different days?
>
> A Yes, five different days.
>
> Q And what is different on those days?
>
> A I've probably got too many chemicals the previous day.
>
> Q And would that have meant you were outside?
>
> A Yes.
>
> Q -- or you could have been inside?
>
> A Yes, outside.
>
> Q And, again, what's different on those days that it's to the point where you can't get out of bed?
>
> A Most likely it's because I drove my daughter to the store. She gets off and she shops and I wait in the car and then she gets back in and she's carrying everything that she picked up from inside the grocery store.

AR 41–44

Notably, she testified that migraines requiring self-isolation occur "about five times a month," (AR 43) which states an approximation, not a minimum number of days she'd necessarily be absent from work each month. Using that approximation still would not establish that she would miss four *working* days each month. Even assuming Plaintiff was incapable of exercising any additional vigilance at avoiding triggers on working days (and the migraines occurred at random), statistically speaking four out of five of those severe migraine days would not necessarily fall on

weekdays as opposed to weekends.

Moreover, Plaintiff did not testify that the migraines occur entirely at random. Although her testimony reflected hypersensitivity to various odors, she did testify with reasonable specificity that her self-isolation days were a result of too much chemical exposure the previous day due to being outside or driving her daughter to the store. AR 41, 44. The fact that she could identify her triggers with reasonable specificity suggests that she could sufficiently avoid exposure to those triggers so as not to miss five working days per month, even if she could not entirely avoid such exposure. With respect to potential triggers in the workplace, the ALJ did not reject the notion that Plaintiff did suffer severe migraines requiring accommodation, but included a limitation in the RFC regarding exposure to fumes.

Plaintiff also contends "she testified that on other days certain odors . . . cause[] a comparably less severe migraine *which requires her* to shower and lay down in a dark room for two or three hours," testimony which she contends would be work preclusive given the VE's statement that two extra breaks of 45-minute duration would preclude all available work. Br. at 18 (citing AR 42) (emphasis added). Plaintiff's argument is an overstatement of her testimony:

Q Okay, now, when you get the more powerful migraine, how long will it last?

A I would say a good two hours to three.

Q What do you do to alleviate it?

A I have to get away and I usually will take a shower to wash everything off and then just relax.

Q And after you take the shower, when you say you relax - -

A Either lay down, just lay down.

Q Do you take any kind of medication?

A No, some of them make me throw up.

Q Anything over the counter?

9

> A No.
>
> Q And do you have to be in a dark quiet room or a certain type of room?
>
> A My bedroom is dark, completely dark. I made it that way.
>
> Q And does that help?
>
> A Yes, absolutely.

AR 42. This testimony establishes that laying in a dark room after a shower was something she did that helped alleviate her pain. It does not establish that her pain was sufficiently severe on non-isolation days that she'd be incapable of working unless the pain was alleviated, nor does it establish that laying in a dark room was the only thing that would alleviate it. The RFC is not the most one can do while remaining pain free; it is the most one can do despite one's limitations. *See* 20 C.F.R. § 416.945 (RFC is the most you can do despite your limitations).

Her testimony as a whole establishes the about five times per month she experiences migraines sufficiently debilitating that they require self-isolation, migraines triggered by exposure to stimuli that she could fairly readily identify and, presumably, therefore avoid such exposure at least some of the time if required to do so in order to sustain gainful employment. It also establishes that she experiences less severe migraines more frequently and chooses to shower and lie in a dark room to alleviate them. Moreover, the ALJ included an accommodation in the RFC to limit exposure in the working environment. The Court is not persuaded that Plaintiff's testimony, even if credited as true, establishes that she would miss four working days per month, or require two 45-minute unscheduled breaks per day.

Assuming Plaintiff's testimony, if credited as true, would establish those work preclusive limitations, the ALJ's reasoning for rejecting the same was sufficient. First, the ALJ identified physical examinations noting that Plaintiff: could ambulate without assistance, sit comfortably on the examination table, had no tenderness or abnormal musculoskeletal motion, no muscle

weakness, no reduced range of motion, 5 out of 5 strength in all muscle groups, intact sensation, normal gait, no cardiorespiratory distress, and no fatigue.  AR 25.  Defendant underscores the same physical examination findings in the response brief.  Plaintiff contends these do not undermine her testimony concerning migraines.  Although the connection between a normal physical examination and Plaintiff's migraines is not immediately apparent, a review of Plaintiff's testimony reveals that she herself drew the connection between migraines and other associated physical ailments:

> Q And so is it a more powerful migraine that's causing this? Is it just something else? What is the actual problem that you experience?
>
> A The pain in my whole body.
>
> Q Okay, and is it one part of your body where you have more pain than any other?
>
> A My back and my arm.
>
> ALJ: Your arm?
>
> CLMT: And which arm?
>
> ATTY: Yes, this one.
>
> ALJ: The left one?
>
> CLMT: Uh-huh.
>
> ATTY: Yes.
>
> ALJ: Yes.
>
> BY THE ATTORNEY:
>
> Q And have your doctors before you stopped them told you why you experience that pain?
>
> A They couldn't figure it out so they send me to a physical therapy to exercise it to get it back to normal.
>
> Q And did it help?
>
> A Yes, you have to exercise and I have to exercise, otherwise it goes numb.

Q So do you do exercises on your own now?

A Yes, I have to do exercises. If not my body cannot work.

Q How often do you do the exercises?

A I try to do it every day but there's days that I do not do it.

Q And how long do the exercises take?

A It started with five minutes, all I could do and as I kept doing it, it went to, I got to 10 and so it climbed. I'm good at 30 and even then I'm exhausted but I try to finish it.

ALJ: I'm sorry. What was that? At 30 minutes of what you're exhausted?

CLMT: I'm trying to exercise my body because it's hard for me to walk. It's hard for me to move my body so I try to walk and stretch my arms and my legs and it took me, I could say only five minutes and I was exhausted when I first started because this has already been a year now and I went to, from like five, I started climbing because I'm exercising, it helps.

ATTY: Okay, and those –

ALJ: What exercises are you doing and where are you doing them?

CLMT: In the house and I watch this Leslie Sasone video where you just walk in your house. You stretch your arms, your legs, real simple.

ALJ: Okay.

BY THE ATTORNEY:

Q Were any of the exercises that you do, those that physical therapy taught you?

A Yeah, especially the arm. When she stretches out your arm those help.

Q Is there any other symptom that you suffer from that we haven't already talked about that you feel is important to tell the judge?

A Well I, there's moodiness, irritation. There's foggy, my memory, sometimes I forget things. I can go to the bathroom and forget why I was there or to the garage. I also, muscle

> weakness.
>
> Q Where do you have the muscle weakness, what part of your body?
>
> A Walking, walking.
>
> Q Legs?
>
> A Going upstairs is very hard. I lose my breath.
>
> Q And is it just your legs where you have the weakness?
>
> A It's like my whole body is tired.
>
> Q How often do you experience that?
>
> A Any time I'm, if I go outside pretty much, into the environment where scents are around and it's just normal now.

AR 44-47.  The testimony was somewhat meandering and may have overlapped with Plaintiff's otherwise unrelated shoulder impairment.  But it is reasonably clear that Plaintiff testified her migraines give rise to whole body pains and that the same triggers that cause her migraines (outside scents) also give rise to whole body weakness.  Thus, her normal musculoskeletal examination (reflecting no tenderness and 5 out of 5 muscle strength in all muscle groups) was relevant and tends to undermine the testimony.

The ALJ and Defendant also underscored Plaintiff's normal brain MRI and CT-scan. This is not however a clear of convincing reason.  Migraines are perhaps a case-in-point example of the logic behind the rule that a claimant's testimony cannot be discredited "on the sole ground that it is not fully corroborated by objective medical evidence . . ."  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Migraines are an extremely common impairment, yet it would be very surprising if most migraine sufferers (or even a significant majority thereof) had objectively identifiable brain abnormalities on MRI.

The ALJ also identified Plaintiff's daily activities as inconsistent with her alleged

symptoms, namely driving over two hours to visit her daughter, handling bills, cooking microwave food, and doing light laundry. None of these activities undermine Plaintiff's testimony concerning migraines.

Finally, the ALJ noted that "the lack of ongoing medical treatment, the overall routine or conservative nature of her treatment, and lack of recent medical records in evidence in record is inconsistent with the claimant's allegations regarding the severity and ongoing persistence of her impairments." AR 25. Conservative treatment is sufficient basis to discount a claimant's testimony regarding severity of an impairment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

Plaintiff underscores the fact that her medical insurance lapsed leaving her uninsured for a significant period of time and cites *Orn* for the proposition that, "failure to receive medical treatment during the period that [a claimant] had no medical insurance cannot support an adverse credibility finding." *Orn v. Astrue*, 495 F.3d 625 at 638 (9th Cir. 2007). She also cites *Carmickle* for the proposition that conservative treatment "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Neither proposition is applicable here. Claimant's lapse of insurance coverage does not explain her decision not to pursue even conservative care such as pain medication, nor did she articulate a good reason for not taking medication. She testified that she does not take pain medication, including over-the-counter medication, because "some of them make me throw up." AR 42. She did not testify that all pain medications made her throw up, or that they were ineffective at controlling her migraines.

Plaintiff also contends that her "treating physicians and the specialized Qualified Medical Examiner concurred that Ms. Munoz's 'treatment' consists of avoiding exposure to the odors and chemicals that trigger her severe migraines and other symptoms . . . . *There is no other treatment*

*option . . .*" (citing AR 367, 371, 387, 392, 444, 445) (emphasis added). To the contrary, the page immediately preceding the one Plaintiff cites reflects that her medications included Ibuprofen 800 and Imitrex 50 (a migraine medication). AR 366. It is true that [a] claimant cannot be discredited for failing to pursue treatment options that don't exist. *LaPeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010). That proposition is inapplicable here considering Plaintiff did not pursue the conservative treatment options available to her. She was prescribed medication, medication she was not taking as of the hearing. Even if her prescription medication was no longer an option following her loss of insurance coverage, there is no reason to believe that over-the-counter medication (such as ibuprofen) was not an option.

It seems here from Plaintiff's own testimony that avoidance of triggers is certainly a sensible first line defense at avoiding migraines. Short of self-isolating in perpetuity, however, taking medication which does not cause Plaintiff to throw up when trigger avoidance fails seems to be a reasonable second line of defense. Indeed, her doctors did prescribe medication. Her unexplained decision not to pursue even conservative treatment measures such as medication justifies the rejection of her pain testimony.

### VI. **Conclusion and Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Adriana Munoz.

IT IS SO ORDERED.

Dated: __**March 20, 2022**__          _____**/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE